## Jonathan Pickard *vs.* John Low.

The mortgagee of personal property, where there is no agreement that the mortgagor shall retain the possession, may maintain replevin therefor, before the expiration of the time of credit; although the mortgagor had been suffered to retain the possession, and had sold the property to a third person.

The action was replevin for a pair of oxen. The writ bore date *October* 10, 1835, and the oxen were replevied the same day. To prove the property in himself the plaintiff produced and proved a paper in these words. "Know all men by these presents, that I, *Wyman C. Hardy,* do agree with *Jonathan Pickard to bill a sail* a yoke of oxen for to secure a payment of thirty dollars, to be paid the twenty-fifth of *October*. If not paid then, the oxen to be the said *Pickard's ;* if paid at the time, the above instrument to be null and void." A description of the oxen only followed, the paper was dated *June* 17, 1835, was under seal, and was signed by *Wyman C. Hardy.* The plaintiff proved, that on the day the paper was executed, he agreed with *Hardy* to sell him the oxen for sixty dollars ; that he took *Hardy's* note for $30, payable *October* 25, 1835 ; that the bill of sale was made to secure the other $30 ; and that he then delivered the oxen to *Hardy.* The note was produced unpaid. It was admitted by the parties, that before the writ was sued out, *Hardy* drove the oxen to *Bangor* and sold them to the defendant. A nonsuit was directed by consent, which was to be set aside, and the defendant defaulted, if in the opinion of the Court, upon these facts, the action could be maintained.

*Kent,* for the plaintiff, contended, that on the sale to *Hardy,* and the mortgage back to the plaintiff, the oxen became his property, subject only to be defeated by payment of the money by the day fixed in the bill of sale. The plaintiff had the right to take them

into his own possession, whenever he pleased. He cited *Lunt* v. *Whitaker*, 1 *Fairf.* 310 ; *Reed* v. *Jewett*, 5 *Greenl.* 96 ; *Tibbetts* .. *Towle*, 3 *Fairf.* 341 ; and 3 *Caines' Cases in Error*, 200.

*Rogers*, for the defendant, contended, that by the paper *Hardy* had the right to retain the possession of the oxen until the time fixed for payment, before which time the action was brought. To maintain replevin the plaintiff must not only be the owner of the property, but must have the right of immediate possession. He cited *Wyman* v. *Dorr*, 3 *Greenl.* 183 ; and *Vincent* v. *Cornell*, 13 *Pick.* 294.

The case was continued *nisi*, and the opinion of the Court was delivered at a subsequent term by

EMERY J. — It is contended, that the right of possession was in *Hardy* at the time the suit was commenced, and therefore replevin would not lie.

By a conveyance in mortgage of goods *the whole legal title passes conditionally to the mortgagee*, and if not redeemed at the time appointed for payment, the title becomes absolute at law, though equity will interfere to compel a redemption. *Story on Bailment*, 197. In a pledge, the special property only, passes to the pledgee, the general property remaining in the pledger. A mortgage may be valid without possession in the mortgagee. *Ward* v. *Sumner*, 5 *Pick.* 59 ; *Holmes* v. *Crane*, 2 *Pick.* 607. But cases of this description are said to stand on very peculiar grounds, and are deemed exceptions to the general rule. The person in whom the general property in a personal chattel is, may maintain an action of trover for the conversion thereof, although he has never been in the actual possession thereof, because a general property in the case of a personal chattel, draws to it a possession in law. And such possession is, by reason of the transitory nature of a personal chattel, sufficient to found this action upon. 2 *Buls.* 268 ; 6 *Bac. Ab.* 682. Still however, to sustain the action of trover, the plaintiff must prove, that at the time of taking, he had the actual possession, or at least a virtual possession of the property ; for if he had a right to the possession, the possession is then implied by law. The person who has the general property,

may transfer the right to the possession for a limited time, and so be restrained from sustaining an action.

Thus if property be leased for a term unexpired, and before the expiration of the term, the property be attached as the property of the lessee, while in his actual possession, the lessor cannot maintain replevin against the officer, because the lessee was entitled to the possession, and his property in the chattels was liable to attachment. *Collins* v. *Evans*, 15 *Pick.* 63; and in 3 *Pick.* 255, it was decided, in *Wheeler* v. *Train*, that the plaintiff should have a right to the possession to maintain replevin.

The action of replevin has been considered to depend on the same principles as the action of trover, and as stated by *Wilde J.* in delivering the opinion of the Court in the case last cited, where he says, to maintain replevin or trover, the plaintiff must have the right of possession at the time of taking, or at the time of suing out his writ. He also observes, that a debtor may mortgage his property to his creditor, and retain the possession until condition broken, if such is the agreement. What is the evidence, that in the case under consideration there was any such agreement? For we cannot but consider that this paper, under seal, was intended as a mortgage for the oxen, as a security for the payment of the note. Where it appears from the terms of the condition, by necessary implication, that it must have been the understanding of the parties, that the mortgagor should retain possession, unless the condition be broken, we should protect the possession of the mortgagor.

As in the case of mortgage of real estate, *Hartshorn* v. *Hubbard*, 2 *N. H. Rep.* 453, where the condition was, that the mortgagor should carry on and improve a farm in a husbandlike manner during the life of the mortgagee and his present wife, and deliver to them one half of 'the yearly produce of the farm; and the mortgagor had ever since the conveyance been in possession of the mortgaged premises, and had performed every thing by him to be done, up to the time of the verdict, according to the condition. It was held, that in such case, the mortgagee could neither enter nor expel, nor maintain a writ of entry against the mortgagor until the condition is broken, or some waste done.

But in respect to this personal property mortgaged, we do not perceive any such necessary implication. The words, " if not paid

then the oxen to be the said *Pickard's,*" is only stating just what the law infers from the fact of a mortgage of goods and chattels, as security for the payment of money at a certain time.

The security of the mortgagee ought not to be diminished by the act of the mortgagor. Even in the case of hiring goods, where an arrangement was made for selling them by the hirer, contrary to the special purpose for which he took them, he was considered guilty of a conversion. *Loeschman* v. *Machin,* 2 *Stark. R.* 311. And *Abbot J.* avowed it as his opinion, that if goods be let on hire, although the person who hires them has the possession of them for the special purpose for which they are lent, yet if he send them to an auctioneer to be sold, he is guilty of a conversion of the goods ; and that if the auctioneer afterwards refuse to deliver them to the owner, unless he will pay a sum of money, which he claims, he is also guilty of a conversion. And although leave was granted to *Maryatt* for the defendant to move the point, he never availed himself of the liberty.

A different construction has been held in *Wyman* v. *Dorr,* 3 *Greenl.* 183, cited by the defendant's counsel, who insists, that on the 10th of *October,* 1835, the plaintiff was not entitled to the possession, that it then continued in *Hardy,* and that the writ of that date was sued out by the plaintiff fifteen days too soon. And the case in 13 *Pick.* 294, *Vincent* v. *Cornell,* is relied on as decisive in his client's favor. In that case *Justice Wilde* observes, that the agreement between *William Cornell* and the plaintiff amounted to a conditional sale, liable to be defeated, it is true, on the non performance of the condition. *Vincent,* the plaintiff in that case, owned the oxen, for which trover was brought, on the 8th *February,* 1831, which he then exchanged with *William Cornell,* who was poor and in debt, for another yoke of oxen ; and said *William Cornell* was to pay to the plaintiff $25,50 to boot, by the 7th of *May,* and he signed and delivered to the plaintiff an agreement, dated 8th of *February,* 1831, in which he acknowledged that he had received of the plaintiff the oxen in question, principally to keep for the plaintiff till the 7th of *May,* and promised to provide food for them for their work and to return them within the time mentioned, in as good order as they then were ; or in case he should pay the plaintiff $25,50 by the 7th of *May,* then the plaintiff was

to release his right to the oxen, but if he should neglect to pay that sum by the time limited, then the plaintiff is to have full right and lawful authority to take the oxen. This was in effect an agreement on the part of the plaintiff to lease these oxen to *William* for that time. This was an action of trover. Between the 8th of *February* and the 7th of *May*, *Pardon Cornell*, the defendant in that case, without notice of the agreement, purchased the oxen of *William*, and afterwards sold them to *Tripp*. In that case, the judgment of the Common Pleas, for the plaintiff, was set aside. We think, that the agreement in that case sufficiently distinguishes it from the one under consideration. We consider that *Hardy* had no right to sell this property, but subject to the plaintiff's better right. He should have taken care, that the note should have been paid at its maturity, if he would have defeated the plaintiff's claim. But as it now is, the plaintiff's right, it would seem, has become absolute, as we have not presented to us any evidence that the redemption has been effected by the payment of the note. The plaintiff, on finding that the mortgagor had undertaken by a transfer to render it more difficult for him to follow his security, had a right immediately to replevy from the second purchaser, lest another alienation might follow, and he be still more distant from his remedy. The *pro forma* direction of nonsuit must be set aside, and as the facts reported lead us to the conclusion, that the plaintiff is entitled to maintain the action, the defendant is to be defaulted.

Note.— By the statute of 1839, *c.* 390, no mortgage of personal property, where the debt secured amounts to more than thirty dollars, shall be valid against any other person than the parties thereto, unless possession of the mortgaged property be delivered to, and retained by, the mortgagee, or unless the mortgage be recorded by the clerk of the city, town, or plantation, where the mortgagor resides.