SAMUEL W. MILLER *ads.* DAVID A. SHREVE AND JOSEPH D. PANCOAST.

1. Where a chattel mortgage is an absolute conveyance of the property, defeasible on the payment of the money secured by it, the mortgagee is entitled to possession of the property; and if the chattels remain in the possession of the mortgagor, and are seized and sold by virtue of an execution against him before the debt secured by the mortgage becomes due, the mortgagee can maintain an action of trover against the officer seizing the property.

2. Chattel mortgages are valid by the laws of the State of New Jersey, and the rights of mortgagees are similar to the rights of mortgagees of real estate, except in those respects in which the title to personal property and real estate differs.

3. Possession of personal property by a vendor or mortgagor after a sale or mortgage of the property is *prima facie* evidence of fraud, but may be explained.

4. Whether the transaction is fraudulent or not, is a question of fact to be settled by the jury.

5. If a merchant or manufacturer mortgage his stock of goods, and the mortgagee permits the mortgagor to remain in possession of the property, and sell it in the usual course of trade, the mortgagor will be considered acting as the agent of the mortgagee, and as receiving the money for him; but it would be otherwise if the whole stock should be sold together, or in any other manner than in the usual course of business.

On case certified from the Salem Circuit for the advisory opinion of this court.

Argued before the Chief Justice, and Justices OGDEN, VREDENBURGH and BROWN.

*Browning,* for plaintiffs.

*Elmer,* for defendant.

The opinion of the court was delivered by

The CHIEF JUSTICE. The plaintiffs brought an action of trover against the defendant, sheriff of Salem, to recover the value of certain goods and chattels of one Eb-

man, which had been mortgaged by him, on the 17th May, 1859, to secure to the plaintiffs the payment of the sum of six hundred and forty-seven dollars and thirty-eight cents in sixty days thereafter. These goods the defendant sold, by virtue of sundry executions in his hands against Ehman, on the 22d June, 1859, while the goods still remained in the possession of Ehman, who had continued in possession after the mortgage as before. The levy and sale took place before the money was due upon the mortgage.

At the trial no question was made as to the existence of the debt or *bona fides* of the mortgage. It must be assumed, therefore, that the money was owing, and that the mortgage had not been given with any actual fraudulent intent.

The case comes before the court upon a certificate. The plaintiffs had a verdict by direction of the court, the jury having been directed that the plaintiffs were entitled to maintain the action and recover the value of the property to the extent of their mortgage money.

Two questions were made upon the argument.

I. That the action could not be maintained, because when the sheriff sold, the mortgage money was not due.

II. That the mortgage was void by the statute of frauds as against the sheriff holding the property under a *fieri facias* without notice of the mortgage at the time of the levy.

Before the sheriff sold he had notice of the mortgage, and was forbidden by the plaintiffs to sell the property; and although the mortgage money was not due at the time of the sale, yet it was when the action was brought. Under these circumstances was the action rightfully brought, assuming the mortgage to be valid against the sheriff, representing a creditor of Ehman?

As no subsequent demand and refusal was shown upon the trial, the question must be determined, whether the sale by the sheriff was a conversion of the property suffi-

cient to maintain trover. If the plaintiffs, at that time, had the title and the right to the immediate possession, the sale by the sheriff was a trespass upon the plaintiff's property in possession, and therefore an unlawful conversion.

The mortgage was an absolute conveyance of the chattels, defeasible upon payment of the money sixty days after date. It entitled the mortgagees to immediate possession. Whatever the rule may be in regard to the right of a mortgagee of real estate to the possession before forfeiture of the mortgage by non-payment of the money, since the decision of the case of *Saunderson* v. *Den, ex dem. Price*, 1 *Zab.* 646, in 1846, by the Court of Errors, I think there is no doubt but that the mortgagee of personal property, by mortgage in the usual form of a deed defeasible on payment of the money, is entitled to the possession of the property immediately on the execution of the mortgage. Such is the legal effect of the mortgage given by Ehman to the plaintiffs; it was to be void on payment of the money, but good until then. 1 *Pars. on Con., note c; Pickard* v. *Low*, 15 *Maine* 48; *Brackett* v. *Bullard*, 12 *Metcalf* 308.

As to the second question, was the mortgage void against the execution creditor because the possession of the goods remained in the mortgagor? It is one that has troubled the courts ever since *Twynes' case*, 3 *Coke's Rep.* 80, in which it was resolved that the donor of goods continuing in possession and using them as his own, was a badge of fraud. In *Edwards* v. *Harben, executor, &c.*, 2 *Term Rep.* 587, it was ruled that when the conveyance is absolute the possession must be delivered immediately, and that such a conveyance without possession was void against creditors.

The courts in England and this country, while acknowledging the authority of that case, have been engaged in adjusting it to the peculiar hardships of cases coming within its reach, by introducing exceptions to its opera-

tion so numerous, and resting upon such different grounds, as to be incapable of classification.

The reasonable limits of a judicial opinion are insufficient to allow an examination of the cases decided in England and this country upon this subject, and it would not lead to any conclusion save that they are in irreconcilable conflict.

The result to which the courts have been long tending, and short of which there seems to be no stopping place, is the adoption of the rule laid down by the court in the much considered case of *Bissel* v. *Hopkins*, 3 *Cow.* 188. The question in every case is, whether the act done is a *bona fide* transaction or a trick and contrivance to defraud creditors. The possession by the vendor of personal chattels after the sale, is not conclusive evidence of fraud. The vendee may, notwithstanding, upon proof that the sale was *bona fide* and for a valuable consideration, and that the possession of the vendor after sale was in pursuance of some agreement not inconsistent with honesty in the transaction, hold under his purchase against creditors.

In *Frazier* v. *Fredericks*, 4 *Zab.* 169, Green, C. J., said: By the common law, as understood in England and in this state, delivery is not necessary, upon a sale of a chattel, to vest the title in the vendee; and although they be sold subsequently to a second purchaser, or seized by the vendor's creditors, the vested property of the first purchaser, in the absence of fraud, will prevail.

*Chumar* v. *Wood*, 1 *Halst.* 155, is a case in which this court is reported to have held that a conveyance of chattels unaccompanied with possession was void. The case came before the court upon *certiorari,* and is loosely reported. If the court, in deciding that case, meant to hold such a conveyance to be void under all circumstances, the decision cannot be supported, and has never been followed. It is probable that all the court intended to say was, that a bill of sale of chattels unaccompanied by pos-

session was, in the absence of explanatory evidence of the *bona fides* of the transaction, void.

In *Hall* v. *Snowhill*, 2 *Green's Rep.* 8, it is assumed, both by Hornblower, C. J., and Ford, J., that the *dictum* attributed to the court in Chumar *v.* Wood is not the settled law of this state ; and I think it may be safely said that the ruling at the circuits for the last twenty years has not been in accordance with that *dictum*.

The case of *Martindale* v. *Booth*, 3 *Barn. & Ad.* 499, cited and relied upon by defendants' counsel, was the case of a mortgage of chattels to secure money lent, with a proviso that the mortgagor should continue in possession until default made in payment of the money borrowed. The mortgagor remained in possession, the goods were seized by the sheriff of Middlesex for the debt of the mortgagor ; the mortgagee claimed them, but the sheriff refused to give them up, and trespass was brought, and the plaintiff recovered. The verdict was sustained by the court, all the judges holding that the mere fact of want of possession did not of itself make the mortgage fraudulent. Parke, J., said the want of delivery is only evidence that the transfer was colorable.

In *Runyon* v. *Groshon*, 1 *Beasley* 86, a mortgage upon a picture unaccompanied by possession was held good against a subsequent *bona fide* purchaser without notice, because the want of possession was satisfactorily explained. I concur in the conclusion of the Chancellor in that case, that possession in the vendor is *prima facie* evidence of fraud, but may be explained.

If in any case nothing else appears but the mortgage unaccompanied by possession of the chattels, a jury should be instructed that the transaction under the evidence appears to be fraudulent, but if a sufficient reason is shown for the non-transfer of possession, the verdict should be otherwise. In all cases, whether fraudulent or not, it is a question of intent to be settled as a question of fact by a jury.

Although the mortgage may not be invalid against creditors or subsequent purchasers for want of possession in the mortgagee, it by no means follows that it may not be void against subsequent purchasers by reason of the mortgagees suffering the mortgagor to use and manage the mortgaged chattels in such a way as to deceive *bona fide* purchasers as to the right of the mortgagor to sell and dispose of the chattels; as in case of the stock of a merchant or manufacturer, if the mortgagee of such a stock should permit the mortgagor to remain in possession, selling and disposing of his stock without restriction in the ordinary course of trade, such conduct would be evidence of fraud to go to a jury; evidence that the mortgage was kept on foot for fraudulent purposes, and the mortgage would be held void, at least so far as property sold in the ordinary course of the trade permitted, was concerned. Or, as suggested by Lord Mansfield, the property subsequently sold might be held discharged from the lien of the mortgage, as sold by the assent of the mortgagee by the mortgagor, as his agent authorized to do so, and receive the purchase money for his benefit. This principle would not apply to the case of the sale of an entire stock of goods out of the ordinary course of trade by the mortgagor, unless the mortgagor had been permitted, with the express knowledge of the mortgagee, to hold himself out to the world as the owner of the property unencumbered by any mortgage.

Mortgages of personal property are valid by the laws of New Jersey, and the rights of the mortgagees are similar to those of mortgagees of real estate, except in those respects in which the title to chattels and real estate differs. *Doughten* v. *Gray* 3 *Stockt.* 323; *Long Dock Company* v. *Mallery*, 1 *Beasley* 93, 431.

CITED *in Chapman* v. *Hunt*, 2 *Beas.* 371.